UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIS DAVIS, #368425,

        Plaintiff,                                 Hon. Janet T. Neff

v.                                                  Case No. 1:16-cv-1405

JAMES GALLAGHER, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 9). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **denied in part and denied as moot in part**.

## BACKGROUND

Plaintiff Chris Davis is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF), although the actions giving rise to this action allegedly occurred while Plaintiff was incarcerated at the Michigan Reformatory (RMI). Plaintiff has initiated this action against Correctional Officer James Gallagher and Inspector (unknown) Miller. The following allegations are contained in Plaintiff's complaint.

On March 11, 2015, Defendant Gallagher called out to Plaintiff, "Hey, Bubba, where are you going?" Plaintiff did not respond. Gallagher then called out to Plaintiff again, this time calling him "Boy" and stating that he was giving a direct order. Plaintiff responded that he was going to his work assignment and that his name was not "Bubba." Plaintiff advised Gallagher that he intended to file a

grievance regarding Gallagher's use of racial slurs. Gallagher responded by warning Plaintiff, "[N]ext time I call you, you better acknowledge me, or I will put your ass in the hole boy!" Later that day, as Plaintiff was leaving the lunch room, Defendant Gallagher called out to Plaintiff, "Hey, Bubba, what's that in your hand?" Plaintiff again complained about Gallagher's use of a racial slur. Gallagher subsequently handcuffed Plaintiff after which Gallagher claimed to have located drugs in Plaintiff's pocket. Gallagher issued a misconduct ticket to Plaintiff and transported him to segregation. A subsequent drug test revealed no evidence of drugs in Plaintiff's system.

On March 20, 2015, Plaintiff reported for a hearing on the misconduct charge, but he was advised that the hearing was adjourned. Plaintiff was not given a reason for the adjournment or informed when the hearing would be reconvened. On April 9, 2015, Defendant Miller informed Plaintiff that he would only be let out of segregation if he reported which inmates or staff members were supplying him with drugs. Miller also threatened Plaintiff, telling him, "[w]e are going to make you suffer in ways you can't imagine." Plaintiff reiterated to Miller that he had not been in possession of drugs and that, therefore, the misconduct ticket was false. Shortly thereafter, Miller increased Plaintiff's security level from Level II to Level IV. Plaintiff never received a hearing on the misconduct ticket and was never found guilty of the alleged misconduct charge. Instead, the prison turned over the matter to the Ionia County prosecutor who prosecuted the matter. On September 7, 2016, Plaintiff was found not guilty of the drug possession charges.

Plaintiff alleges that his placement in segregation and increase in security classification violated his Eighth Amendment rights. Plaintiff alleges that by falsely claiming he possessed heroin and issuing a false misconduct ticket, Defendant Gallagher violated his substantive due process rights. Plaintiff alleges that by increasing his security level without a hearing, Defendant Miller violated his

procedural due process rights. Plaintiff claims that Defendant Gallaher falsely charged him with possessing drugs in retaliation for Plaintiff's threat to file a grievance about Gallagher's use of racial slurs. Plaintiff also claims that Defendant Miller retaliated against him for refusing to provide information about drug dealing in the prison. Finally, Plaintiff asserts that Defendant Gallagher subjected him to malicious prosecution. Many of Plaintiff's claims have already been dismissed. (ECF No. 5). At this juncture, the only claims remaining are the following claims asserted against Defendant Gallagher: (1) substantive due process; (2) retaliation; and (3) malicious prosecution. Defendant Gallagher now moves for summary judgment on the ground that Plaintiff has failed to exhaust his administrative remedies regarding his remaining claims.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere

"scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party

with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.  Prison Litigation Reform Act Screening

Pursuant to the Prison Litigation Reform Act (PLRA), the Court "shall" dismiss any prisoner claim which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). For the reasons discussed herein, the Court concludes that two of Plaintiff's three remaining claims must be dismissed for failure to state a claim.

#### A.  Substantive Due Process

As the Court previously noted, Plaintiff "asserts that Defendant Gallagher violated his substantive due process rights by planting evidence and framing him for drug possession." (ECF No. 5 at PageID.18). As the Court further observed, Plaintiff asserts a claim for malicious prosecution, alleging that "Defendant Gallagher acted maliciously to plant evidence and have Plaintiff prosecuted for possession of heroin." (ECF No. 5 at PageID22). These claims are based on the same factual allegations, namely that Defendant Gallagher falsely alleged that Plaintiff was in possession of heroin which lead to Plaintiff's subsequent prosecution by the Ionia County Prosecutor. Plaintiff's substantive due process claim, however, is foreclosed by his malicious prosecution claim.

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as

the proper constitutional foundation upon which to base a § 1983 action. In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law. Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause. *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)). The Court noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process. *Albright*, 510 U.S. at 271-72. The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment. The Court observed that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment. *Id.* at 272-73. The Court, therefore, concluded that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he

must bring his claim, because substantive due process could afford him "no relief." *Albright*, 510 U.S. at 274-75.

Simply put, a claim for malicious prosecution must be brought pursuant to the Fourth Amendment not the Fourteenth Amendment's substantive due process clause. *Id.* at 271-75; *see also*, *Darrah v. City of Oak Park*, 255 F.3d 301, 308 (6th Cir. 2001) ("the substantive component of the Fourteenth Amendment's Due Process Clause, 'with its scarce and open-ended guideposts,' may not serve as the basis for a § 1983 malicious prosecution claim"); *Cherry v. Howie*, 191 F.Supp.3d 707, 720 (W.D. Ky., June 1, 2016) ("it is the Fourth Amendment and its protections against malicious prosecution rather than the 'more generalized notion of substantive due process' that provides Ms. Cherry with a source of constitutional protection"). Accordingly, the undersigned recommends that Plaintiff's substantive due process claim be dismissed. The undersigned further recommends that to the extent Defendant moves to dismiss this claim on exhaustion grounds such motion be denied as moot.

        B.     Retaliation

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff alleges that Defendant Gallagher falsely charged him with possessing drugs in retaliation for engaging in protected conduct. In his complaint, Plaintiff alleges that his protected

conduct was "tell[ing] Defendant Gallagher that he would file a grievance against him for his racial slurs." (ECF No. 1 at PageID.6 ¶ 30).  Filing a grievance, and by extension a verbal threat to file a grievance, is protected conduct, but only if the grievance is not frivolous. *See, e.g., Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (the First Amendment does not afford prisoners the right to file frivolous grievances).  In this context, a grievance is frivolous if it alleges conduct which fails to state a claim upon which relief may be granted. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (a prisoner's act of filing a grievance constitutes protected conduct "only to the extent that the underlying claims ha[ve] merit"); *Dykes v. Marshall*, 2016 WL 1059618 at *4 (W.D. Mich., Mar. 17, 2016) ("a grievance is frivolous, and thus not considered protected activity, 'if it complains of conduct that is not legally actionable'").

   Plaintiff alleges that Defendant Gallagher referred to him as "Bubba" and "boy."  While such conduct may be unprofessional, it simply does not implicate the Constitution. *Bruederle v. Louisville Metro Government*, 687 F.3d 771, 779 (6th Cir. 2012) ("accusations of 'verbal abuse'. . .cannot create an actionable Eighth Amendment claim"); *Taylor v. Dickerson*, 2016 WL 4384804 at *7 (W.D. Tenn., Aug. 16, 2016) (claims that prison official employed "taunting and racial slurs" do not state a claim); *Alexander v. Govern*, 2016 WL 2604634 (W.D. Mich., May 6, 2016) (same).  Thus, a grievance that Defendant called him "Bubba" and "boy" would be frivolous as Defendant's comments to Plaintiff do not give rise to a valid cause of action.  Because any such grievance would be frivolous, Plaintiff's retaliation claim fails because he was not engaged in protected conduct.  Accordingly, the undersigned recommends that Plaintiff's retaliation claim be dismissed.  The undersigned further recommends that to the extent Defendant moves to dismiss this claim on exhaustion grounds such motion be denied as moot.

**II.      Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

Defendant asserts that during the relevant time period, Plaintiff pursued through all three steps of the grievance process only two grievances neither of which properly exhausts Plaintiff's remaining claim. Both of the grievances in question were initiated long after the events in question. (ECF No. 10-3 at PageID.51-66). Accordingly, both grievances were properly rejected as being untimely filed. (ECF No. 10-3 at PageID.51-66). Thus, neither of these grievances properly exhausts either of Plaintiff's remaining claims. Plaintiff does not dispute this evidence or the conclusion that such fails to constitute proper exhaustion of his remaining claims. Instead, Plaintiff argues that he has satisfied the exhaustion requirement by pursuing all *available* administrative remedies.

Plaintiff has submitted an affidavit in which he alleges that on March 15, 2015, he submitted a grievance in which he alleged, in part, that Defendant Gallagher "framed him" by falsely alleging that Plaintiff was in possession of illegal drugs. (ECF No. 12-1 at PageID.82-83). Plaintiff alleges that he was later informed by another prison official, "we have no grievance for you against any of our staff members. . ." (ECF No. 12-1 at PageID.82-83). In other words, Plaintiff alleges that prison officials did not process his grievance thus making the grievance process unavailable and foreclosing Defendant's argument that Plaintiff's remaining claim be dismissed on exhaustion grounds. The

Supreme Court recently clarified that a prisoner need only exhaust such administrative remedies as are available. *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones"). Accordingly, the undersigned recommends that Defendant's motion to dismiss, on exhaustion grounds, Plaintiff's malicious prosecution claim be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment, (ECF No. 9), be **denied in part and denied as moot in part**. Specifically, the undersigned recommends that Plaintiff's retaliation and substantive due process claims be dismissed for failure to state a claim, Defendant's motion to dismiss Plaintiff's retaliation and substantive due process claims, on exhaustion grounds, be denied as moot, and Defendant's motion to dismiss Plaintiff's malicious prosecution claim be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  May 23, 2017                                     /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge